UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GREGORY BAKER,<br>      Plaintiff, | )<br>)<br>) |
| v. | )    CAUSE NO.. 2:05-CV-141-PRC<br>) |
| AIG CLAIM SERVICES, INC. and<br>AMERICAN HOME ASSURANCE<br>COMPANY,<br>      Defendants. | )<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment [DE 13], filed by the Defendants, AIG Claim Services, Inc. and American Home Assurance Company (collectively "AIG"), on July 28, 2005. For the reasons stated below, the Court grants the Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

The Plaintiff, Gregory Baker, filed a Complaint against AIG on March 16, 2005, in Lake Superior Court in Hammond, Indiana. The Complaint alleges that AIG engaged in fraud and committed spoliation when it failed to produce a recorded statement of Ronda Tompkins, an eyewitness to an accident in which Baker was injured. Based on these claims, Baker seeks compensatory and punitive damages.

On April 15, 2005, this matter was removed from the Lake Superior Court to the United States District Court for the Northern District of Indiana, Hammond Division. On July 28, 2005, AIG filed a Motion for Summary Judgment. Baker responded to the motion on August 29, 2005. On September 9, 2005, AIG submitted a Reply Brief in Support of Summary Judgment.

The parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted); *see also Windle v. City of Marion, Ind.*, 321 F.3d 658, 660-61 (7th Cir. 2003); *Shanoff v. Illinois Dept. of Human Srvcs.*, 258 F.3d 696, 701 (7th Cir. 2001).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which he believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving

party may discharge his "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support his motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if he chooses, may support his motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on his pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R.*

3

*Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## FACTUAL BACKGROUND

The facts viewed in the light most favorable to the non-moving party, Baker, are as follows. On October 30, 2000, Baker, while on his bicycle, was struck by an Illiana Disposal Partnership ("Illiana") vehicle while he was crossing Calumet Avenue in Hammond, Indiana. An individual named Ronda Tompkins witnessed the collision. As a result of the injuries he sustained, Baker filed a suit for damages against Illiana and Aaron C. Burns, the driver of the Illiana vehicle, in Lake Superior Court on October 28, 2002.[1] Illiana is insured by AIG for matters such as the one involved in the underlying state litigation. The claim against Illiana remains pending in Indiana state court.

During discovery for the suit against Illiana in Indiana state court, Baker served Illiana with interrogatories, which Illiana answered and returned on February 23, 2004. Included within the interrogatories was a question that asked for the names and addresses of any witnesses to the accident. Illiana's answer listed Tompkins and referred Baker to the police report for her address. Though the police report misspells her last name, the report contains her address and her phone number.[2]

---

[1] Illiana Disposal Partnership was incorrectly sued as Illiana Disposal & Recycling in the Lake Superior Court. For purposes of this order, Illiana Disposal Partnership will be identified as "Illiana."

[2] During her deposition in April 2005, Tompkins remembered her phone number to be the same as the one contained within the police report. In July of 2004, Tompkins and her family moved to a different home.

In the state court proceedings, Baker also served Illiana with requests for production of any witness statements, asking for:

> All witness statements of any sort, whether written, recorded, or by a court reporter, whether signed or unsigned, whether transcribed or untranscribed, of any person having or claiming to have any knowledge of the facts or circumstances of this case, excluding only those privileged against disclosure at trial.

Pl. Br., Exh. 2, p.1 (Defendant's Response to Request to Produce, No. 1). In response, Illiana stated that it did not have any such statements. Baker acknowledges that this production request was not served upon AIG during discovery in the underlying state litigation.

In the underlying state case, a Motion for Summary Judgment was filed by defendants Burns and Illiana. In response to the motion, Baker filed a brief without designating an affidavit or sworn testimony by Tompkins. Subsequently, on or about February 1, 2005, Baker was able to locate Tompkins and obtain her statement. Following the discovery of Tompkins, Baker moved in the state court action to supplement his response to the Motion for Summary Judgment with an affidavit from Tompkins.

In her affidavit, Tompkins states that she gave her name and phone number immediately after the accident to the driver of the Illiana truck and to the police. Tompkins further states that, a few weeks after the accident, she was contacted by a representative for Illiana and/or the truck driver who took her recorded statement of her recollection of the October 30, 2000 accident.

In connection with the state court case, Illiana deposed Tompkins on April 11, 2005. During the deposition, Tompkins could not remember the name of the representative that called her nor if the caller was someone from AIG or Illiana. She testified that, during her telephone conversation with the representative, the representative asked Tompkins if she minded if the conversation was recorded. However, Tompkins further testified that she does not remember whether she gave

5

permission to have her statement recorded but that she was under the impression that the conversation was recorded. Although she remembers believing that the statement was going to be recorded, Tompkins testified that she was never given a transcript of the call nor was she ever contacted again regarding the case by the same person. In addition, Tompkins asserted that her statement during the deposition was exactly the same as her affidavit and as the recorded statement given to the representative of Illiana who contacted her by telephone.

The claim file at AIG regarding the October 30, 2000 accident was managed by Mark Piccirillo, a Claim Director for AIG whose affidavit was offered in support of AIG's Motion for Summary Judgment in this case. In his affidavit, Piccirillo states that his review of the claim file revealed that a recorded statement of Tompkins was never taken by any representative of AIG or at AIG's request. Further, Piccirillo testifies that AIG has never been in possession of any recorded statement of Tompkins. In fact, he testifies that the pre-suit investigation by AIG of the October 30, 2000 accident consisted only of a written request for a copy of the police report. In addition, Piccirillo reviewed the payment history regarding this claim and found that AIG never paid an independent investigator or AIG's Internal Investigative Service Division to obtain a recorded statement from Tompkins.

Daniel Zlatic, one of the attorneys representing Illiana in the underlying state litigation, testifies in his affidavit offered by AIG that, during his representation of Illiana in that suit, he was never informed by AIG of any statement, recorded or otherwise, taken from Tompkins. Further, Zlatic was never provided a statement of Tompkins in any form by Illiana or AIG.

Finally, Douglas Rosenbaum, the General Manager for Illiana, testifies in his affidavit, offered by Baker, that Illiana investigatory procedures do not include taking statements from

6

witnesses and that this procedure did not vary with the investigation of the October 30, 2000 incident. Rosenbaum also states that, to his knowledge, no Illiana representative or anyone else ever took a recorded statement from Tompkins.

**DISCUSSION**

In his Complaint, Baker claims that AIG engaged in fraudulent concealment and spoliation of evidence, namely the recorded statement of Tompkins. Baker further claims in his response brief that Count I of his Complaint is a claim of fraud rather than of fraudulent concealment. As a result of AIG's alleged actions, Baker asserts that he is damaged based upon his justifiable detrimental reliance upon AIG's non-disclosure. AIG denies these claims, asserting that it was never in possession of the evidence in question, and AIG moves for summary judgment on each of Baker's claims.

**A. FRAUDULENT CONCEALMENT**

In the Complaint, Baker entitles Count I as "Fraudulent Concealment," although the substance of the count alleges fraud. As AIG articulated in its motion, fraudulent concealment is an equitable doctrine that "operates to estop a defendant from asserting the statute of limitations as a bar to a claim whenever the defendant, by [its] own actions, prevents the plaintiff from obtaining the knowledge necessary to pursue a claim." *Johnson v. Hoosier Enters. III, Inc.*, 815 N.E.2d 542, 549 (Ind. Ct. App. 2004) (quoting *Doe v. Shults-Lewis Child & Family Servs.*, 718 N.E.2d 738, 744

7

(Ind. 1999)); *see* Ind. Code § 34-11-5-1.[3]  Because there is no evidence of record that AIG is asserting the statute of limitations as a defense, Count I of the Complaint fails to state a claim upon which relief can be granted.  Accordingly, the Court grants summary judgement in favor of AIG on any claim of fraudulent concealment pleaded in the Complaint.

As noted, the substance of Count I appears to allege actual fraud, and Baker argues that the cause of action pleaded in Count I was not fraudulent concealment but rather fraud.  Baker contends that AIG engaged in "the fraudulent withholding and/or failure to disclose material facts."  Pl. Br., p. 3 n. 1.  Out of caution, AIG also seeks summary judgment on Baker's claim of fraud in its Motion for Summary Judgment.  Accordingly, the issue of fraud is fully briefed, and the Court will address whether Baker's fraud claim can withstand AIG's Motion for Summary Judgment.

Broadly, Baker claims that "AIG committed fraud as an insurer of Illiana Disposal when they withheld or failed to disclose in response to Plaintiff's Request for Production the fact that it had a witness statement taken from Ronda Tompkins."  Pl. Br. at 3.  Under Indiana law, there are six elements for a claim of actual fraud:  (1) a material representation of past or existing facts which (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party; and (6) proximately caused injury to the complaining party. *See Bilimoria Computers Sys., LLC v. America Online, Inc.*, 829 N.E.2d 150, 155 (Ind. Ct. App. 2005) (quoting *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 889

---

[3] The statute provides: "If a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitation after the discovery of the cause of action."  Ind. Code § 34-11-5-1.

8

(Ind. Ct. App. 2000)).[4]  Baker asserts that a recorded statement of Tompkins was taken by a representative of Illiana and that AIG committed fraud when it claimed it had no such evidence; however, Baker is not able to establish any of the elements of fraud.

First, Baker cannot demonstrate that AIG made a material representation about past and/or existing facts.  As an initial matter, Baker has not shown that AIG took or ever possessed Tompkins' recorded statement.  From Tompkins' testimony that a recorded statement was taken and from Rosenbaum's claim that Illiana does not contact witnesses during an investigation, Baker draws the inference that the insurance company, AIG, must have taken the statement.  However, this inference, in light of the affidavits presented by AIG, is insufficient to withstand summary judgment.  In support of its Motion for Summary Judgment, AIG offered the affidavit of Piccirillo, who testified that, based on a review of AIG's claim file, a recorded statement of Tompkins was never taken by a representative of AIG or at AIG's request.  Piccirillo also reviewed the financial history of the investigation of the October 30, 2000 accident and found that AIG never paid an independent investigator or AIG's Internal Investigative Service Division to obtain a statement from Tompkins.  AIG also offered the affidavit of Zlatic, counsel for Illiana in the underlying litigation, who testified that he was never informed by AIG of any statement of Tompkins', recorded or otherwise.

Also, there are other reasonable inferences that could be drawn from Tompkins' testimony and Rosenbaum's claim of noninvolvement by Illiana, namely that a recorded statement was taken by someone who misrepresented themselves to Tompkins or that a statement was taken by someone but not by AIG or Illiana.  All that Tompkins' testimony establishes is that someone took a statement from her and may have recorded the statement.  Tompkins' testimony and the inferences drawn

---

[4] In its reply brief, AIG also argues that Baker did not plead fraud with specificity.  However, this argument was not raised in the Motion for Summary Judgment and, therefore, is deemed waived.

9

therefrom do not refute AIG's affidavits that a recorded statement by Tompkins was not taken by AIG or that it was never in possession of one.

More fundamentally, Baker presents no evidence to prove that AIG ever made a representation or failed to make a representation to Baker regarding Tompkins' statement. Baker asserts that, because AIG insures Illiana and is involved in the underlying litigation, AIG should have disclosed the recorded statement. However, AIG asserts that it did not receive from Illiana the request for production that had been served on Illiana by Baker in the state court case. In fact, during discovery in the present action, Baker acknowledged that the initial discovery request served on Illiana in the underlying litigation was never served on AIG. If AIG was unaware of the request for production, the insurance company could not have made a material misrepresentation in the underlying litigation about the existence or nonexistence of the recorded statement. Nor does Baker provide any evidence of a misrepresentation made by AIG to him relating to a recorded statement of Tompkins. For these reasons, Baker cannot establish that AIG had any information to withhold or that AIG made any representation at all to Baker regarding Tompkins' recorded statement.

The second element of fraud focuses on the falseness of the material representation and the third element demands that the defendant have made the representation knowing that it was false. *See id*. Baker argues that, because AIG failed to disclose the existence of Tompkins' statement in the underlying state litigation, AIG "knowingly or with reckless ignorance made an untrue misrepresentation of an existing material fact." Pl. Br. at 6. As set forth above, no representation was made by AIG to Baker regarding Tompkins' statement. Nevertheless, AIG has demonstrated through evidence in support of its Motion for Summary Judgment, including Piccirillo's assertion that the file contained no evidence of a statement by Tompkins or of an attempt to take her statement

10

and Zaltic's claim that he was never informed of the existence of Tompkins' statement, that AIG did not know of such a statement. There is no evidence presented by Baker to prove that AIG ever denied having Tompkins' recorded statement or that any alleged denial of existence by AIG was false and was made with knowledge of this falsity.

Similarly, there can be no "intent to deceive" under the fourth element because Baker has not shown that AIG had the statement or made any representation to Baker regarding the statement. Baker's reasoning that AIG intended to deceive him because Tompkins' statement would have been detrimental to AIG in the Illiana state action is not enough to establish any of the elements of actual fraud.

Finally, the fifth and sixth elements of fraud are best considered together as they require that the representation was relied upon by the complaining party and that this reliance caused injury. First, Baker has not shown any misrepresentation made by AIG on which he relied. Moreover, Baker contends that he was injured because the four-year delay between Tompkins' original recorded statement and her 2005 deposition presumably reduced Tompkins' memory of the event and because he was unable to use the evidence in developing case strategy and during the discovery process. Baker claims he was not able to locate Tompkins until February 2005. However, Tompkins' name and phone number were on the original police report. Even if Baker's attorneys did not view the police report of the accident, they were also made aware that Tompkins was a witness in the underlying litigation in February 2004 by Illiana's Answers to Interrogatories. Def. Br., Ex. 1, p. 2 (Illiana Answers to Interrogatories). In response to Interrogatory No. 2, Illiana indicated that Tompkins was a witness. This was almost a year before Baker was able to secure a statement from Tompkins in 2005. Baker had every opportunity to locate Tompkins on his own with

11

the information provided from the police report and during discovery. Though Baker was unable to locate Tompkins until February 2005, he nevertheless filed a motion in the state proceeding for leave to amend his response to the Motion for Summary Judgment with Tompkins' affidavit. The notification in 2004 and the opportunity to amend his response lead to the conclusion that there was no deprivation of any opportunity for Baker to fully prepare his case in state court.

Accordingly, Baker has failed to prove that AIG committed actual fraud, and the Court grants summary judgment in favor of AIG on Baker's claim of actual fraud.

### B.  SPOLIATION

In addition to the fraud claim, Baker asserts a claim of spoliation as a result of AIG's actions related to Tompkins' recorded statement. Spoliation consists of "the intentional destruction, mutilation, alteration, or concealment of evidence, usually a document. If proved, spoliation may be used to establish that the evidence was unfavorable to the party responsible." *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000) (quoting Black's Law Dictionary 1409 (7th ed. 1999)). "In Indiana, the *exclusive* possession of fact or evidence by a party, coupled with the suppression of the facts or evidence by that party, may result in an inference that the production of the evidence would be against the interest of the party which suppresses it." *Id*. (emphasis added). "Negligent or intentional spoliation of evidence is actionable as a tort only if the party alleged to have lost or destroyed the evidence owed a duty to the person bringing the spoliation claim to have preserved it." *Glotzbach v. Froman*, 827 N.E.2d 105, 109 (Ind. Ct. App. 2005).

Indiana recognizes a limited right to bring an independent third party cause of action for spoliation. *See Glotzbach*, 827 N.E.2d at 108 (citing *Thompson v. Owensby*, 704 N.E.2d 134, 138

(Ind. Ct. App. 1998), *trans. denied*). More specifically, a third-party claimant may assert a spoliation claim for damages for negligent or intentional conduct by an insurance carrier. *Thompson*, 704 N.E.2d at 140; *see also see also Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 352 (Ind. 2005) (recognizing that the Indiana Court of Appeals has found a limited spoilation tort remedy against insurance companies in *Thompson*, 704 N.E.2d at 138). In *Thompson*, an insurance company collected a dog restraining cable as evidence pertaining to a dog bite claim and subsequently lost this key piece of evidence. 704 N.E.2d at 135-36. As a result of the insurance company's actions, the plaintiffs filed a negligence claim for failure to preserve evidence. *Id*. at 135. Determining that the insurance company owed a duty to the plaintiffs, the court found that the insurance company's knowledge of the plaintiffs' claim and its possession of the evidence created a special relationship between the parties. *Id*. at 137. Further, the court reasoned that, because the evidence was deemed important enough to collect, the insurance company could foresee that loss of the evidence would hinder the plaintiffs' claim. *Id*. at 138. Finally, the court noted that public policy supported the finding of a duty. *Id*. Therefore, the court held that insurance companies may be liable for spoliation of evidence if the insurance company takes possession of the evidence during the course of an investigation and then proceeds to lose or destroy the evidence. *Id*. at 140.

Accordingly, AIG owed a duty to preserve any evidence it collected during the investigation into Baker's claim in the underlying state litigation. Baker contends that, since Tompkins stated that a representative of the driver or Illiana contacted her and because a representative for Illiana testified that Illiana does not take witness statements and did not in this case, AIG must have possessed the statement. Because AIG had a duty to give the recording to Baker, a claim for spoliation exists, so reasons Baker. However, a claim of spoliation requires that evidence be in the exclusive possession

13

of the accused party and that the evidence have been suppressed or destroyed.  Baker is unable to prove either of these elements.  As already discussed in detail, there is no evidence, other than the inference from Tompkins' deposition suggested by Baker, to prove that the recorded statement was in the exclusive possession of AIG or even in AIG's possession in any way, and, thus, there is no evidence that AIG suppressed or destroyed the statement.

Spoliation of evidence as a tort action has been limited to physical evidence, and the tort has not been expanded to include spoliation of testimonial evidence.  *See Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 663, 664 (Ind. Ct. App. 2002).  In *Loomis*, the court noted that "[p]hysical evidence is readily capable of being evaluated in terms of being exclusively possessed and being made unavailable, destroyed or altered.  Testimonial evidence does not lend itself to being similarly evaluated."  *Id*.  Although the statement made by Tompkins does not appear to have been taken under oath, as was the statement in *Loomis*, the court's characterization of "testimonial" evidence is equally applicable to Tompkins' 2000 telephonic statement.  Even if Baker could establish that the physical, recorded statement existed, was in the exclusive possession of AIG, and was withheld, destroyed, or altered by AIG, he nevertheless could have located Tompkins well before February 2005 based on the response to Interrogatory No. 2 identifying Tompkins as a witness in February 2004 or her identification in the police report following the collision.  Further, Tompkins noted that her recollection of the contents of her recorded telephonic statement and the contents of her deposition were exactly the same.  Therefore, her statement was not exclusively possessed because it was available to Baker at any time in the form of a statement or a deposition, and nothing prevented Baker from independently taking Tompkins' statement.  *See Loomis*, 764 N.E.2d at 664.

Therefore, the Court finds that Baker cannot maintain his claim of spoliation and grants summary judgment in favor of AIG on the claim of spoliation.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the Motion for Summary Judgment [DE 13] and **ORDERS** that judgment be entered in favor of the Defendants, AIG Claim Services, Inc. and American Home Assurance Company, and against the Plaintiff, Gregory Baker. All pretrial and trial dates are **VACATED**.

SO ORDERED this 7th day of November, 2005.

    s/ Paul R. Cherry
    MAGISTRATE JUDGE PAUL R. CHERRY
    UNITED STATES DISTRICT COURT

cc:  All counsel of record